*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEONDRA REID,

      Plaintiff-Appellee,

v

SHEILA JACKSON ELLOUT and CNS HEALTHCARE,

      Defendants

and

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

      Defendant-Appellant.

UNPUBLISHED
April 15, 2026
9:50 AM

No. 371880
Wayne Circuit Court
LC No. 21-017126-NI

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

Plaintiff filed this action seeking third-party automobile negligence damages from the driver and owner of the motor vehicle that struck her in an October 21, 2021 rear-end collision, and personal protection insurance (PIP) benefits for allowable expenses under Michigan's no-fault act, MCL 500.3101 *et seq.* from her automobile insurance, State Farm Mutual Automobile Insurance Complaint (State Farm) arising from this collision. The driver and owner of the other vehicle eventually admitted liability on plaintiff's third-party claim and the case proceeded to jury trial on the issue of damages on that claim, as well as on plaintiff's claim for personal protection insurance (PIP) benefits against State Farm.[1] The jury rendered its verdict against State Farm for medical benefits, work loss and replacement services, as well as 12% penalty interest on the medical benefits and work loss awards, which was reduced to an April 30, 2024 judgment.

---

[1] The details of plaintiff's third-party automobile negligence claims and their resolution at trial are not at issue on this appeal and will be largely omitted.

Plaintiff also moved for no-fault attorney fees and costs on the jury verdict against State Farm, which the trial court awarded in a June 20, 2024 order. Following the denial of its May 21, 2024 motion for JNOV or a new trial in a July 12, 2024 order, State Farm brought this timely appeal of right. MCR 7.203(A)(1); MCR 7.204(A)(1)(d).

State Farm contends on appeal that the trial court erred in: (1) denying its MCR 2.116(C)(10) motion for summary disposition because plaintiff had failed to produce *any* proof of damages supporting its PIP claim; (2) failing to enter a directed verdict against plaintiff based upon her failure to establish the reasonableness and "customariness" of the charges on plaintiff's claims for allowable expenses; (3) admitting plaintiff's post-accident medical bills and records, her health insurer's explanations of benefits (EOBs), and State Farm's explanations of review (EORs) into evidence, while declining to admit her pre-accident medical bills, thereby impairing State Farm's ability to defend against these bills and right to a fair trial; and (4) failing to strike the causation testimony of plaintiff's treating physician, Dr. Eltahawy, when that testimony lacked adequate foundation regarding plaintiff's pre-accident health condition. State Farm further contends that: (1) there was insufficient evidence in the record at trial for the jury to award plaintiff no-fault penalty interest; (2) the trial court abused its discretion in awarding plaintiff attorneys fees and costs under MCL 500.3148(1) and MCR 2.625, respectively; and (3) that the trial court erred or abused its discretion (as appropriate) in denying State Farm's motion for JNOV or a new trial.

We affirm in part, vacate in part, and remand.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

At the time of the subject October 21, 2021 rear-end collision, Plaintiff had health insurance through her employer with Blue Care Network (BCN). She likewise had an automobile insurance policy with State Farm that included coordinated personal injury protection (PIP) coverage at that time. When Plaintiff was unable to maintain her BCN coverage because she was unable to work due to her injuries from the subject accident, State Farm, for a period of time through May 2023, opted to pay her health insurance premiums rather than become primary for her medical expenses. State Farm then became plaintiff's primary insurer as of June 1, 2023 when it stopped paying her health insurance premiums.[2]

---

[2] While State Farm amended brief on appeal contends that it "paid [p]laintiff's accrued health insurance premium balance of $11,172.70" on June 7, 2023, the payment log it cites in support of this assertion instead indicates that that amount was paid to plaintiff's employer on April 25, 2023 and there is no indication it was in payment of premiums that came due more than a month later. Additionally, State Farm's counsel admitted it only paid plaintiff's health insurance benefits (which plaintiff's counsel contended was only payment of her health insurance premiums) through May 2023 at a May 17, 2024 hearing on plaintiff's motion for attorney fees and costs against State Farm. Citing plaintiff's trial testimony as support, State Farm claims that at all relevant times plaintiff submitted her medical bills to BCN under her primary health insurance through her employer. However, this misstates plaintiff's trial testimony, which is that Drs. Gabr and Eltahawy were submitting their bills for her treatment to BCN, and that, as far as she knows: BCN was

In response to State Farm's written discovery requests, plaintiff provided signed authorizations for the production of her records from her medical practitioners (including their billing records), employers, health insurer, PIP carrier, disability insurance carrier, pharmacy, health insurer, banks and financial institutions; as well as for production of her records from all of the schools she attended, the Department of Veterans Affairs, the Michigan Department of Community Health, LARA, and the Social Security Administration; and a general authorization which essentially allowed Defendants to obtain any record from any person or entity. Each of these authorizations remained effective throughout the pendency of the litigation in the trial court.

State Farm filed a motion for summary disposition on September 8, 2023 arguing that plaintiff failed to present *any* proof of damages during discovery, at case evaluation, or facilitation; plaintiff has been paid all no-fault benefits in a timely manner for which she submitted "reasonable proof of the fact and of the amount of loss sustained," and that there is accordingly no case in controversy because plaintiff has "never requested, identified, or provided reasonable proof of fact and the amount of the loss sustained." Prior to filing this motion for summary disposition, State Farm never moved to compel any supplementation or additional responses to the written discovery requests it served on plaintiff.

Plaintiff filed a response to the summary disposition motion arguing:

- her complaint made claims for medical bills, attendant care, replacement services, and wage loss;

- she produced wage information to establish her wage loss and outstanding medical bills in discovery, which, along with additional, supplemental records,[3] she attached as exhibits to her response brief;

- she testified at her deposition that her brother provides sporadic compensable assistance with her household services and attendant care;[4]

-  State Farm has been paying her premiums for her primary health insurance coverage and that such monthly payments need to continue;

- her serious and debilitating injuries, which have required injections and spinal surgery, are continuing and she has not returned to work or reached her pre-accident status; and

---

paying their bills and the bills she believes were outstanding already went to BCN and there is "some type of balance associated with those bills."

[3] State Farm contends in its amended brief on appeal that no exhibit containing medical bills as additional allowable expenses was attached to plaintiff's response to its motion for summary disposition. However, the response was e-served at the same time as it was e-filed and the response in the trial court's electronic record includes that exhibit.

[4] State Farm takes issue with plaintiff failing to attach any part of her deposition to her response to its summary disposition motion, but the transcript was filed as an exhibit to its motion.

- plaintiff memorialized benefits she was seeking in a September 7, 2023 letter she attached as an exhibit and quoted in the body of her brief.

Plaintiff's response accordingly contended that she has in fact provided proof of damages during discovery and has otherwise "identified, or provided reasonable proof of fact and the amount of the loss sustained" with her response such that State Farm's motion should be denied. State Farm filed a reply, and the trial court denied the motion without oral argument on the basis of a "question of fact" in an October 30, 2023 order.

At trial on her PIP claim against State Farm, plaintiff presented her testimony, and the testimony of her brother and two of her treating physicians, Drs. Gabr and Eltahawy. State Farm presented only the testimony of two expert physician witnesses that it hired to examine plaintiff. After both parties rested, State Farm moved to strike Dr. Eltahawy's testimony, claiming he lacked sufficient information to form an opinion as to the cause of plaintiff's injuries because "he never saw any of the [p]laintiff's medical records from before the accident." The trial court found State Farm's arguments went to the weight (rather than the admissibility) of that doctor's testimony, i.e., that the jury will consider the issue of Dr. Eltahawy not having seen plaintiff's pre-accident medical records "in determining whether or not there was an aggravation of a preexisting back injury" and denied the motion.

State Farm then moved for directed verdict, which the trial court denied, determining that the plaintiff presented sufficient evidence in support of her PIP claim to submit it to the jury.

Following the jury's verdict in plaintiff's favor on her PIP claims against State Farm, including awards of allowable expenses incurred by or on behalf of the plaintiff arising out of the accidental bodily injury, wage loss, preplacement services, and interest, the trial court entered a judgment consistent therewith.

Plaintiff filed a motion for attorney fees and costs, State Farm filed a response, and the trial court heard oral argument before granting the motion.

State Farm then filed a motion for judgment notwithstanding the verdict (JNOV), plaintiff filed a response, and the trial court heard oral argument before denying the motion.

State Farm then filed this timely appeal of right.

## II. ANALYSIS

### A. IMPROPER ENLARGEMENT OF THE RECORD ON APPEAL AND FAILURE TO PROVIDE EXHIBITS OFFERED IN EVIDENCE

Plaintiff contends that State Farm's amended brief on appeal cites and its appendix includes numerous documents that are not part of the trial court record as defined by MCR 7.210(A)(1): State Farm's initial disclosures, plaintiff's demand, emails from plaintiff's counsel, a Physiatry and Rehabilitation Associates bill, a Capital Surgery bill, and letters to plaintiff from her health insurer.

State Farm's reply brief on appeal claims its initial disclosures, plaintiff's demand, and the Physiatry and Rehabilitation Associates and Capital Surgery bills were part of its claims file which was offered (and admitted in part) into evidence at trial. However, State Farm has failed to comply with Michigan Court Rules requirement to file a copy of this claims file exhibit which it offered as State Farm's Exhibit Z (and plaintiff's counsel asserts it "does not currently have access to the document admitted as the [c]laims [f]ile at the trial"). MCR 7.210(C) provides that "[w]ithin 21 days after the claim of appeal is filed, a party possessing any exhibits offered in evidence, whether admitted or not, *must* file them with the trial court or tribunal clerk, unless by stipulation of the parties or order of the trial court or tribunal they are not to be sent, of copies, summaries, or excerpts are to be sent." (Emphasis added). See also *People v Wilson*, 96 Mich App 792, 796; 293 NW2d 710 (1980) (finding GCR 1963, 812.4, the virtually identical predecessor to MCR 7.210(C), "mandatory in its direction that exhibits be filed" and that the prosecutor bore primary legal responsibility for the absence of his exhibit from the trial court record); *Wade v Bay City*, 57 Mich App 581, 589; 226 NW2d 569 (1975) (declining to consider the admissibility of an offered employment records exhibit on appeal where it is not part of the record on appeal, finding "[i]t is the burden of the challenging party to see that offered exhibits whether admitted or not admitted are included in the record upon which we must make a decision," and "[a]nything we said about them herein would be sheer guesswork."). We are accordingly unable to confirm whether these specific documents plaintiff contends were not part of the trial court record are included within the claims file exhibit State Farm offered at trial and we will not consider them as part of this appeal.

State Farm admits in its reply brief on appeal that the referenced emails from plaintiff's counsel are not part of the trial court record, but it nonetheless included them in the appendix "as context for [p]laintiff's submission of the EOBs from [p]laintiff's health insurer that accompanied the emails. . . . to show the date and time they were sent and received." We will accordingly likewise not consider these emails in our resolution of this appeal. However, the referenced letters to plaintiff from her health insurer were exhibits to plaintiff's response to State Farm's motion for summary disposition, part of the trial court record, and are properly considered.

## B. STATE FARM'S MOTION FOR SUMMARY DISPOSITION

MCR 2.116(C)(10) provides for summary disposition on a motion where: "Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. (quotation marks and citations omitted).]

"If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020).

As noted, State Farm's motion for summary disposition contended plaintiff failed to produce *any* proof of damages supporting its PIP claim, such that there was no case or controversy because plaintiff has "never requested, identified, or provided reasonable proof of fact and the amount of the loss sustained." But plaintiff did in fact provide wage information to establish her wage loss and outstanding medical bills in discovery, along with additional, supplemental records; testified at her deposition that her brother provides sporadic compensable assistance with her household services; likewise provided signed authorizations in response to State Farm's discovery requests enabling it to obtain any and all records supporting her claim for PIP benefits; and memorialized benefits she was seeking (at that time) in a September 7, 2023 letter. Further, State Farm never moved to compel any supplementation or additional responses to the written discovery requests it served on plaintiff before seeking summary disposition.

We note again that State Farm's motion contended that plaintiff failed to produce *any* proof of damages supporting its PIP claim, it did not make any argument for summary disposition based on the categories of PIP damages sought.[5] In light of the above, we agree with the trial court's conclusion that plaintiff presented a question of material fact as to her having suffered damages compensable as PIP benefits, such that its MCR 2.116(C)(10) motion for summary disposition was properly denied.

## C. STATE FARM'S DIRECTED VERDICT MOTION: REASONABLENESS AND CUSTOMARINESS OF MEDICAL PROVIDER CHARGES

State Farm moved for directed verdict after plaintiff submitted her evidence in the case, in part, on the ground that plaintiff failed to make a claim for no-fault benefits for the services that were provided to her, including by Drs. Gabr and Eltahawy, because she did not present any evidence establishing that the charges were "reasonable" or that the services were "reasonably necessary." On appeal, State Farm contends the trial court erred in failing to enter a directed verdict against plaintiff based upon her failure to establish the reasonableness and "customariness" of the charges of the medical providers, "including Drs. Gabr and Eltahawy, or the keepers of their records" on plaintiff's claims for allowable expenses.

> In deciding whether or not to grant a motion for a directed verdict, the trial judge must accord to the non-moving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the non-moving party. If the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied. [*Caldwell v Fox*, 394 Mich 401, 407; 231 NW2d 46 (1975).]

---

[5] MCR 2.119(A)(1)(c) requires that a motion "state the relief or order sought."

A motion for a directed verdict should be granted only if the evidence fails to establish a claim as a matter of law. *Sniecinski v Blue Cross & Blue Shield of Michigan,* 469 Mich 124, 131; 666 NW2d 186 (2003).

A trial court's decision on a motion for a directed verdict is reviewed de novo. *Zsigo v Hurley Med Ctr*, 475 Mich 215, 220; 716 NW2d 220 (2006). "When considering a motion for a directed verdict, it is 'the factfinder's responsibility to determine the credibility and weight of trial testimony.'" *King v Reed*, 278 Mich App 504, 522; 751 NW2d 525 (2008), quoting *Zeeland Farm Services, Inc v JBL Enterprises, Inc,* 219 Mich App 190, 195; 555 NW2d 733 (1996). "If reasonable jurors could honestly have reached different conclusions, [the appellate court] may not substitute its judgment for that of the jury." *Silberstein v Pro-Golf of America, Inc,* 278 Mich App 446, 455; 750 NW2d 615 (2008) (quotation marks and citation omitted).

MCL 500.3107(1)(a) "requires that three factors be met before an item is an 'allowable expense': 1) the charge must be reasonable, 2) the expense must be reasonably necessary, and 3) the expense must be incurred. These are the standard requirements for recovery of such expenses under all no-fault plans . . . ." *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990) (quotation marks and citation omitted). "Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense. *Id*.

"Whether expenses are reasonable and reasonably necessary is generally a question of fact to be resolved by the jury." *Kallabat v State Farm Mut Auto Ins Co*, 256 Mich App 146, 151; 662 NW2d 97 (2003). There is no requirement for the plaintiff in an action under MCL 500.3107 to "offer *direct* evidence from the treating physician that the expenses incurred were both reasonable and reasonably necessary in order for the plaintiff to prevail." *Id*. And there is likewise "no requirement that every service provider present a billing witness to testify that his or her office's charges were reasonable." *Soliman v Hung Quoc Dinh*, unpublished per curiam opinion of the Court of Appeals, issued April 30, 2020 (Docket No. 344978), p 4.[6] Instead:

> as with any civil case, the jury is entitled to consider all the evidence introduced by the plaintiff to decide whether the plaintiff has proved by a preponderance of the evidence that the expenses were reasonable and necessary. Thus, direct and circumstantial evidence, and permissible inferences therefrom, may be considered by the jury to determine whether there is sufficient proof that the expenses were both reasonable and necessary. [*Kallabat*, 256 Mich App at 152, citing M Civ JI 3.09.]

On appeal, State Farm fails to raise the issue whether the services rendered to plaintiff were reasonably necessary in their statement of questions presented (or in the text of their amended brief on appeal) such that this issue is abandoned. *Marx v Dep't of Commerce*, 220 Mich App 66, 81;

---

[6] Unpublished decisions of this Court are not binding under the rule of stare decisis, but may still be considered as having instructive or persuasive value. *Youmans v Charter Twp of Bloomfield*, 336 Mich App 161, 217; 969 NW2d 570 (2021), citing MCR 7.215(C)(1).

558 NW2d 460 (1996). Furthermore, while its amended brief on appeal contends plaintiff failed to present any evidence that plaintiff's health care provider's charges were "customary" pursuant to MCL 500.3157, State Farm failed to contest this issue at trial and has therefore waived this challenge.[7] *Begin v Michigan Bell Tel Co*, 284 Mich App 581, 588-590; 773 NW2d 271 (2009), overruled in part on other grounds, *Admire v Auto-Owners Ins Co*, 494 Mich 10 (2013). See also *Napier v Jacobs*, 429 Mich 222, 227-228; 414 NW2d 862 (1987) ("Generally, to preserve an issue for appellate review, it must be properly raised at trial.").

Turning to the reasonableness of the medical provider charges, during the trial, Dr. Gabr, plaintiff's physical medicine and rehabilitation specialist physician, and Dr. Eltahawy, plaintiff's neurosurgeon, were questioned concerning their billing practices. Both Drs. Gabr and Eltahawy testified that their offices bill the same amounts for services regardless of the type of insurance their patients have or whether their patients have insurance—in other words, the amount billed does not vary based upon the patient's ability to pay via insurance or otherwise, but rather reflects the services rendered and, as Dr. Eltahawy testified, are not simply a product of seeking payment and profit, "because we treat patients with all insurances, all-comers, including even uninsured." Further, Dr. Gabr referred plaintiff to Dr. Eltahawy for potential surgical intervention of the cervical and lumbar spine and testified that the procedures that Dr. Eltahawy performed were consistent with his diagnosis of the plaintiff's need. Further, the jury was provided with plaintiff's medical bills and records (including those of Drs. Gabr and Eltahawy), BCN's EOBs, and State Farm's EORs for their scrutiny of the reasonableness of those expenses and thus they were not left to "speculate concerning the cost of a particular procedure or service." *Kallabat*, 256 Mich App at 151.

In light of the foregoing, as in *Kallabat*, we find that the presentation of this direct and circumstantial evidence and the reasonable inferences to be drawn from it was sufficient to present a question of material fact for the jury's resolution as to the reasonableness of the expenses so as to survive State Farm's directed verdict motion at the end of plaintiff's proofs.

---

[7] "A plaintiff seeking payment of no-fault benefits bears the burden of proving both the reasonableness and the customariness of the provider's charges." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 480-481; 960 NW2d 186 (2020) (quotation marks and citation omitted). "[T]he provisions requiring that charges be reasonable and customary are two separate and distinct limitations on the amount health-care providers may charge and what insurers must pay . . . ." *Id*. at 481 (quotation marks and citation omitted). While customariness was raised in State Farm's motion for JNOV, the jury was not asked to decide this issue and it was already waived by that time. See *Affiliated Diagnostics of Oakland v Farmers Ins Exchange*, unpublished per curiam opinion of the Court of Appeals, issued May 26, 2016 (Docket No. 325873), pp 3-4 (holding that the defendant likewise waived the issue of customariness by failing to raise it until defendant's motion for JNOV). State Farm made a single reference to there being no evidence to support that the $15 per hour plaintiff's brother charges for attendant care is "customary" at oral argument on its directed verdict motion, but makes no such argument regarding any of the allowable expenses at issue on appeal.

D.  DECLINING TO ADMIT PRE-ACCIDENT MEDICAL BILLS AND PURPORTEDLY ADMITTING MEDICAL BILLS, EOBS, AND EORS THAT PLAINTIFF PURPORTEDLY FAILED TO PREVIOUSLY PRODUCE

State Farm contends the trial court abused its discretion when it admitted certain of plaintiff's post-accident medical bills, her health insurer's EOBs, and State Farm's EORs into evidence that she purportedly had not previously produced, while declining to admit her pre-accident medical bills, thereby impairing State Farm's ability to defend against these bills and right to a fair trial.

> A trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion.  The trial court abuses its discretion if its decision is outside the range of principled outcomes.  A decision on a close evidentiary question ordinarily cannot be an abuse of discretion.  Moreover, even if a court abuses its discretion in admitting or excluding evidence, the error will not merit reversal unless a substantial right of a party is affected, MRE 103(a), and it affirmatively appears that the failure to grant relief is inconsistent with substantial justice, MCR 2.613(A).  [*Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729; 761 NW2d 454 (2008) (quotation marks and citations omitted).]

State Farm claims that the medical bills, EOBs, and EORs the trial court admitted into evidence as plaintiff's exhibit 21 were never produced to State Farm, citing MRE 801 and MRE 802 pertaining to hearsay, and that no proper foundation was laid for them at trial.  The trial court admitted them on the basis of Plaintiff's counsel's representation that the materials were part of State Farm's claims file that had already been admitted into evidence.  In fact, in response to State Farm's argument that this was a trial by surprise based upon plaintiff being able to introduce such records, plaintiff responded that instead the opposite was true:

> As far as their [m]otion in [l]imine regarding the bills, . . . if the [c]ourt will recall . . . , we were the ones that were sandbagged here, because recall [that] I didn't get their claims file, an updated claim file until two weeks before trial.  So every—

> And then I find out that there were bills in there that State Farm had received and we had never had notice of.  So those health insurance claim forms and those bills that were submitted by Capital Surgery Center and Physiatry & Rehab we had never seen before, so that was the reason why we had to submit them when we did.[8]

---

[8] State Farm filed a pre-trial motion in limine to bar plaintiff from introducing anything at trial beyond what was produced in response to its motion for summary disposition.  In response, plaintiff asserted "it is she that is having to conduct a trial by surprise in that she is just now receiving and reviewing an updated claims file only days before the date of trial."  The trial court denied the motion.

Although State Farm asserts the documents in plaintiff's exhibit 21 were not included in its claims file exhibit, as previously noted, State Farm has failed to comply with Michigan Court Rules requirement to file a copy of its claims file exhibit, MCR 7.210(C), or to identify the specific pages within plaintiff's exhibit 21 it contends were not part of that claims file. It has accordingly failed to demonstrate the trial court abused its discretion in admitting the exhibit.

In addition, we find State Farm's argument regarding its own EOR documents to be, at best, disingenuous. State Farm, either through its employees or agents, created these documents. They are communications from State Farm to plaintiff explaining State Farm's review of various medical bills. For State Farm to suggest that it was not in possession of its own documents simply makes no sense. To the extent that State Farm argues that the documents should not have been admitted into evidence because plaintiff did not supply State Farm with a copy of State Farm's own documents, that argument is likewise without merit.

State Farm additionally argues "there was no testimony from anyone at [BCN] regarding any of the hearsay documents presented to the jury regarding what was not covered by the health insurer (if anything, what was being paid by the health insurer, and what was not being paid, for example[)]." However, State Farm never objected to the admission of plaintiff's Exhibit 21 on hearsay grounds, it was established that State Farm was plaintiff's primary insurer as of June 1, 2023 after it stopped paying her health insurance premiums, and as just addressed, Drs. Gabr and Eltahawy testified regarding the reasonableness of their billing and the jury was provided with plaintiff's medical bills and records (including those of Drs. Gabr and Eltahawy), BCN's EOBs, and State Farm's EORs for their scrutiny of the reasonableness of those expenses and thus they were not left to "speculate concerning the cost of a particular procedure or service." *Kallabat*, 256 Mich App at 151.

State Farm asserts the trial court abused its discretion in permitting plaintiff to remove certain erroneously included medical bills for treatment occurring before the subject accident from plaintiff's exhibit 21 and insert additional billing, including from Physiatry and Rehabilitation Associates, after plaintiff testified. State Farm claims this resulted in it having cross-examined plaintiff on bills that were never ultimately submitted to the jury in its deliberation and bills being submitted to the jury that were not produced in discovery or in response to its motion for summary disposition. However, before commencing his cross-examination of plaintiff, State Farm's counsel argued that any bills for treatment occurring before the subject accident should not be admitted into evidence and plaintiff and the trial court agreed; plaintiff was not entitled to recover on medical bills for treatment occurring before the subject accident; and defendant does not articulate and we do not discern how the removal of those medical bills was an abuse of discretion. Further still, these records from plaintiff's exhibit 21 were admitted into evidence before plaintiff rested, defendant knew this to be the case based on a colloquy with the trial court, and nothing prevented defendant from recalling plaintiff as a witness or calling a State Farm representative to contest the reasonableness of this medical billing, but it chose not to do so. And again, State Farm has not filed its claims file exhibit or identified the pages within plaintiff's exhibit 21 it contends were not part of that claims file.

State Farm's claim that the trial court erred in failing to enforce MCR 2.313(C)(1) and bar plaintiff from submitting medical bills, EOBs, and EORs that the trial court admitted into evidence as plaintiff's exhibit 21, because they allegedly were not previously produced to State Farm is

unpersuasive where it has failed to indicate what specific documents were purportedly not in its possession as part of its claims file exhibit, which it erroneously failed to file in support of its appeal. On this incomplete record, we cannot conclude the trial court abused its discretion.[9]

### E. MOTION TO STRIKE DR. ELTAHAWY'S TESTIMONY

State Farm contends the trial court erred in failing to strike the causation testimony of plaintiff's treating neurosurgeon, Dr. Eltahawy, because, due to his lack of knowledge of plaintiff's pre-accident injuries, condition and treatment, that testimony lacked a legally adequate foundation pursuant to MRE 702. Following the parties arguing the motion on the record, the trial court ruled:

> The fact that he didn't examine her prior to that accident, that just goes to the weight, I mean that's a fact that the jury will weigh in determining whether or not there was an aggravation of the preexisting back injury.
>
> So Motion to Strike is denied.

Review of this decision is subject to the same abuse of discretion standard of review as the preceding issue. *Morales*, 279 Mich App at 729.

Dr. Eltahawy testified that the subject rear-end collision was a cause of the slippage, protrusions, tears and herniations that he observed in plaintiff's spine. He conceded that in treating plaintiff he did not see any medical records that predated the subject October 21, 2021 accident, including any MRI test or report. Nonetheless, Dr. Eltahawy testified that plaintiff advised him of having pre-accident pain and receiving a pre-accident pain block and that having such complaints and injections before the car accident would not change his opinions regarding the origination of the injuries he observed.

> I think a lot of . . . people have some degree of background back pain or neck pain. . . . But it's very uncommon to reach a point to be causing significant nerve compression to the point that it would necessitate surgical intervention in the way [plaintiff] needed.
>
> [I]f she's had treatment before for symptoms that were present prior, that doesn't kind of take away from the description of her symptoms and the severity of it that has essentially changed after the accident, indicating a significant trauma on top of what she had probably degenerative from before.

Dr. Eltahawy further testified that:

---

[9] We also note, again, that State Farm's argument about the admission of its own EORs defies logic.

- when he performed the disk replacement surgery on plaintiff, his actual examination of the disc at issue informed the basis of his opinion that her injuries arose as a result of the automobile accident;

- tears in a disc are much more likely to be a result of trauma than degeneration and his opinion to a reasonable degree of medical certainty was that the tears he observed were traumatic and caused by the car accident; and

- the pre-accident cervical and lumbar MRI reports do not indicate anything acute or traumatic, compared to the post-accident cervical and lumbar MRIs that demonstrate disk herniations and "a slip at L4-5 that is new," which were traumatic and attributable to car accident to a reasonable degree of medical certainty.

State Farm's argument relies almost entirely upon *Adalpe v Baldwin*, unpublished opinion per curiam of the Court of Appeals, issued May 10, 2018 (Docket No. 336255). We find this non-binding decision is factually distinguished and unpersuasive as a basis to find the trial court abused its discretion in denying State Farm's motion to strike Dr. Eltahawy's causation testimony after plaintiff rested in her PIP case at trial. In *Adalpe*, this Court found the trial court did not abuse its discretion in concluding the plaintiff's experts' causation opinions set forth in their deposition testimony were not reliable and therefore not properly considered under MRE 702 in defending against summary disposition. *Id.* at 5. The two doctors did not have the benefit of a pre-accident MRI when making their causation determination but instead relied on the medical history plaintiff provided that disclosed no pre-accident back or neck pain. The trial court found this materially incomplete history was the key for moving the doctors "from a general diagnosis of unspecified-trauma injuries to the narrow diagnosis of injuries cause by an auto accident" and rendered plaintiff's experts' opinions "fundamentally deficient" and unreliable. *Id.* at 6. On appeal, the plaintiff took issue with defendant never showing her experts the 2011 MRI at their depositions and they "could render an accurate opinion at trial if provided with the pre-accident MRI." *Id.* The Court noted that discovery was still open at the time of the summary disposition motion and the "[p]laintiff could have provided the doctors with a copy of the 2011 MRI and obtained further sworn testimony indicating whether the doctors' opinions would have changed if they had been aware of plaintiff's pre-accident back and neck injuries," but fatally failed to do so. *Id.*

The procedural posture of this case is different from *Adalpe*, where here we are tasked with determining whether the trial court admitting (i.e., failing to strike) the expert testimony was outside the range of principled outcomes, versus determining whether the trial court finding the expert testimony was inadmissible and striking it was outside the range of principled outcomes. As this Court was bound to affirm under that standard of review in *Adalpe*, so we are bound to affirm here. As already described, Dr. Eltahawy's trial testimony is markedly distinguished from the deposition testimony of the experts in *Adalpe* where here he:

- visualized the tears in the cervical disk he replaced and determined they were caused by trauma to a reasonable degree of medical certainty;

- testified that plaintiff disclosed pre-accident pain and a pre-accident pain block injection; and

- was shown and testified regarding the pre-accident cervical and lumbar MRI reports (that do not indicate anything acute or traumatic), compared to the post-accident cervical and lumbar MRIs that demonstrate disk herniations and "a slip at L4-5 that is new," (which he determined were traumatic and attributable to car accident to a reasonable degree of medical certainty).

Dr. Eltahawy made an offer of circumstantial proof that supports a reasonable inference of causation. The "circumstantial proofs could facilitate a jury in inferring a logical causal relationship between" the subject rear-end collision and the aggravation of the preexisting back injury necessitating Dr. Eltahawy's surgical and other medical treatment. *Skinner v Square D Co*, 445 Mich 163, 169; 516 NW2d 475 (1994). In other words, they "fairly indicate[d] a logical sequence of cause and effect." *Id*. at 167-168 (quotation marks and citation omitted) (alteration in original).

Dr. Eltahawy's causation opinion was not mere "reductive speculative logic" as State Farm claims, but rather, it is the properly considered product of the direct and circumstantial evidence and deductive reasoning, i.e., the scientific method, which, in the medical field, is referred to as differential diagnosis.[10]

Based on the foregoing we do not find the trial court abused its discretion in refusing to strike Dr. Eltahawy's causation testimony. In light of questions of material fact necessitating a fact-finder's resolution, the trial court's ruling does not fall outside the range of principled outcomes.

### F. JURY'S AWARD OF INTEREST

State Farm argues there was insufficient evidence in the record at trial for the jury to award plaintiff no-fault penalty interest pursuant to MCL 500.3142(2).

MCL 500.3142(2) provides (subject to MCL 500.3107(1)(a),[11] which is not pertinent here):

---

[10] Differential diagnosis is "a standard diagnostic tool used by medical professionals to diagnose the most likely cause or causes of illness, injury and disease." *Glaser v Thompson Med Co, Inc*, 32 F3d 969, 978 (CA 6, 1994). "Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Westberry v Gislaved Gummi AB*, 178 F3d 257, 262 (CA 4, 1999). "[T]he overwhelming majority of the courts of appeals that have addressed the issue have held that a medical opinion on causation based upon a reliable differential diagnosis is sufficiently valid to satisfy the first prong of the Rule 702 inquiry." *Id*. at 263; *People v McKewen*, 326 Mich App 342, 351; 926 NW2d 888 (2018) (characterizing differential diagnosis as "a well-recognized process").

[11] Addressing "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a).

-13-

[P]ersonal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. . . .   [I]f reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. . . .   [A]ny part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer.  For the purpose of calculating the extent to which benefits are overdue, payment must be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

"[O]verdue payment[s] bear[] simple interest at the rate of 12% per annum."  MCL 500.3142(4). The jury awarded plaintiff $22,921.03 in no-fault penalty interest, which appears to be 12% interest on its medical benefits ($145,066.10) and work loss ($45,942.50) awards to plaintiff, which the trial court reduced to judgment.

Penalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable, irrespective of the insurer's good faith in not promptly paying the benefits.  No-fault penalty interest is intended to penalize an insurer that is dilatory in paying a claim.  This Court reviews for clear error a trial court's finding whether a communication qualifies as reasonable proof of the fact or amount of a claim. [*Williams v AAA Michigan*, 250 Mich App 249, 265; 646 NW2d 476 (2002) (citations omitted).]

"Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake occurred."  *Amerisure Ins Co v Auto-Owners Ins Co*, 262 Mich App 10, 24; 684 NW2d 391 (2004).

In reviewing an insufficiency of the evidence claim in a civil case (here, as to the jury's award of no-fault penalty interest), this Court views the evidence in a light most favorable to plaintiff, giving plaintiff "the benefit of every reasonable inference that can be drawn from the evidence." *Boggerty v Wilson*, 160 Mich App 514, 522; 408 NW2d 809 (1987).  "If, after viewing the evidence in this manner, reasonable men could differ, the question was properly left to the jury." *Id*.

State Farm claims it did not receive reasonable proof of the fact and amount of loss of any of the medical expenses until plaintiff was allowed to amend her trial exhibit 21 to produce bills for post-accident treatment to the jury, specifically noting $34,339.58 in Physiatry and Rehabilitation Associates and $90,225 in Capital Surgery billing.  However, as addressed earlier, the trial court admitted the medical bills, EOBs, and EORs contained in plaintiff's exhibit 21 on the basis that they were part of State Farm's claims file that had already been admitted into evidence and State Farm has failed to demonstrate the trial court abused its discretion in admitting that exhibit.  The many EORs contained within exhibit 21 demonstrate that State Farm was *in fact* receiving notice of plaintiff's medical expenses, but not paying them, within the requisite 30-day period, in many cases for years.  Consistent with this evidence, plaintiff testified at trial that her treaters would first bill her health insurer and then bill State Farm for charges the health insurer did not cover.  Dr. Gabr likewise testified that his usual practice in cases of a coordinated

automobile insurance policy such was at issue here was to bill the primary insurer first and then the auto insurance carrier.

Notably, MCL 500.3142(2) "requires only *reasonable* proof of the amount of loss, not exact proof." *Williams*, 250 Mich App at 267. Once plaintiff provided State Farm with the medical bills and EOBs indicating the total amount billed and the amount paid by BCN, State Farm had the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits owed, but upon later being determined liable on those PIP benefits, penalty interest must be assessed. *See id*. at 265, citing *Davis v Citizens Ins Co of Am*, 195 Mich App 323, 328-329; 489 NW2d 214 (1992). Accordingly, we affirm the jury's award of no-fault penalty interest.

## G. TRIAL COURT'S AWARD OF ATTORNEY FEES AND COSTS

State Farm claims the trial court erred or abused its discretion (as applicable) in awarding no-fault attorney fees pursuant to MCL 500.3148(1) and costs pursuant to MCR 2.625.

A trial court's award of attorney fees and costs is reviewed for an abuse of discretion. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). A trial court's factual findings regarding an award of attorney fees under MCL 500.3148(1) due to the defendant's unreasonable refusal to pay no-fault benefits is reviewed for clear error. *Attard v Citizens Ins Co of America*, 237 Mich App 311, 316-317; 602 NW2d 633 (1999). A trial court's ruling on a motion to tax costs pursuant to MCR 2.625 is reviewed for an abuse of discretion. *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 71; 903 NW2d 197 (2017) "[W]hether a particular expense is taxable as a cost is a question of law" that is reviewed de novo. *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 71; 903 NW2d 197 (2017) (quotation marks and citation omitted).

State Farm contends that the trial court did not address its argument that the examinations performed by its experts, Drs. Ali and Kalkanis, "created a bona fide factual dispute whether no-fault benefits were overdue." On the contrary, at the May 17, 2024 hearing on plaintiff's motion for attorney fees and costs against State Farm, State Farm's counsel stated that those experts' reports acknowledged plaintiff was injured in the subject rear-end collision and required medical treatment, and that State Farm paid for plaintiff's health insurance premiums though May 2023 ("[t]hey paid the medical bills via paying the health insurance, which in turn paid the medical bills"), whereupon plaintiff's health insurance was discontinued and State Farm became primary. Plaintiff's counsel responded that State Farm only paid plaintiff's health insurance *premiums* through May 2023, and it never paid her medical bills to the extent they were not covered by that health insurance, despite it being contractually obliged to do so under her coordinated coverage. When State Farm stopped paying plaintiff's health insurance premiums it became her primary insurer as of June 1, 2023 and it apparently never at any time paid her medical bills that were not covered by her health insurance. Further, State Farm never at any time paid any wage loss benefits. The trial court confirmed that State Farm paying plaintiff's health insurance premiums for this period of time had no effect on the number of hours plaintiff's counsel worked on the file.

State Farm further contends the trial court did not address its argument that plaintiff did not present proof of her "additional" claims until well after the close of discovery, most of which were presented for the first time at trial, such that it had a good faith basis to believe that "there was no further need for PIP benefits, and there was a good faith factual dispute as to the efficacy

-15-

of [p]laintiff's claims for PIP benefits." But State Farm admitted at oral argument on plaintiff's motion for attorney fees and costs that plaintiff submitted a disability slip from a doctor that stated she would have been disable until the end of December 2021, yet never paid any portion plaintiff's wage loss claim including this period of time for which it raised no defense, necessitating (like the unpaid medical bills that were not covered by her health insurance) that plaintiff incur the number of hours of attorney fees the trial court awarded.

Further, State Farm contends

the record is bereft of any fact-specific findings by the trial court supporting a conclusion that State Farm's failure to pay any benefits was unreasonable. Rather than discussing any evidence concerning the claimed expenses, the trial court merely referred to the jury verdict. The trial court's failure to focus on or address any specific facts surrounding the disputed expenses while instead referencing the jury verdict amounted to clear error.

On the contrary, it is evident from the hearing transcript that the trial court found State Farm's failure to pay plaintiff's medical bills that were not covered by her health insurance through the period of time State Farm's experts acknowledged plaintiff was injured in the subject rear-end collision and required medical treatment, as well as its failure to pay her wage loss until the end of December 2021 (consistent with her doctor's disability slip), was unreasonable, necessitating that plaintiff incur the number of hours of attorney fees the trial court awarded.

Defense counsel admitted at the motion hearing that it did not contest the number of hours plaintiff's counsel submitted in a detailed statement, but rather the hourly rate of $750 she requested. The trial court agreed with defense counsel's arguments as to the appropriate rate of plaintiff's counsel's compensation awarded being in the median range set forth in the State Bar of Michigan 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report of $282.50 per hour. Based on the foregoing, we find no clear error in the trial court's factual findings regarding the trial court's award of attorney fees due to the defendant's unreasonable refusal to pay no-fault benefits and no abuse of discretion in its award of attorney fees under MCL 500.3148(1).

Turning to State Farm's challenge to the costs the trial court awarded pursuant to MCR 2.625, State Farm argues that many of the costs that plaintiff sought and the trial court awarded were not permitted and should be stricken from the award. We agree.

"The power to tax costs is purely statutory, and the prevailing party cannot recover such expenses absent statutory authority." *Guerrero v Smith*, 280 Mich App 647, 670; 761 NW2d 723 (2008).

"[C]osts shall be allowed as a matter of course to the prevailing party. This does not mean, of course, that every expense incurred by the prevailing party in connection with the proceeding may be recovered against the opposing party. The term 'costs' as used [in] MCR 2.625(A) takes its content from the statutory provisions defining what items are taxable as costs." [*Id*. at 671 (quotations marks and citation omitted).]

-16-

Plaintiff counsel sought $6,118.81 in costs and submitted an itemized, verified bill of costs in support thereof. The trial court awarded $6,000 in costs without specifying what it did not include from plaintiff's submission.

State Farm complains plaintiff's motion provided no documents in support of the amount being claimed. However, State Farm provides no authority that this is required and plaintiff's itemized, verified bill of costs comports with the requirements of MCR 2.625(G).

State Farm additionally complains that there is no statutory authority for the award of the costs plaintiff requested. MCL 600.2401 provides:

> Except as otherwise provided by statute, the supreme court shall by rule regulate the taxation of costs. When costs are allowed in any action or proceeding in the supreme court, the circuit court or the district court the items and amount thereof shall be governed by this chapter except as otherwise provided in this act.

While plaintiff cites no statutory authority as to her costs, we nonetheless note that MCL 600.2164 provides for the award of expert witness fees, which would justify the trial court's award of $1,000 for the services of "Thomson Economics" and $1,000 for the deposition of Dr. Eltahawy.

MCL 600.2549 provides for:

> Reasonable and actual fees paid for depositions of witnesses filed in any clerk's office and for the certified copies of documents or papers recorded or filed in any public office shall be allowed in the taxation of costs only if, at the trial or when damages were assessed, the depositions were read in evidence, except for impeachment purposes, or the documents or papers were necessarily used.

This statute appears to likewise provide for an award of the $1000 cost of Dr. Eltahawy's deposition. The plaintiff's bill of costs also lists "2/3/23 Meadowbrook court reporting (Def)," "2/13/24 Hanson/Renaissance Court Rep & Video," "02/26/24 Tracy court room playback" and "2/26/24 Tracy Clegg video dep" and "3/15/24 Cindy Boedy court report for transcript." There is no indication that the first item, which appears to be the cost of the defendant's discovery deposition well before trial, which occurred from February 12-16, 2024, meets the requirements of MCL 600.2549 to be awarded as a cost in this matter. Likewise, although the date of the second item is during the trial dates, the record provides insufficient information to make a determination whether this charge meets the requirements of MCL 600.2549 for its assessment as a cost in this matter. However, it readily appears from the record that the remaining three items were for the production and playback of the video depositions of plaintiff's treating physicians Drs. Gabr and Eltahawy at trial. Such video deposition production and use at trial is appropriately assessed as costs pursuant to MCL 600.2549. *Guerrero v Smith*, 280 Mich App 647, 674; 761 NW2d 723 (2008). See also MCR 2.315(I) ("The costs of taking a video deposition and the cost for its use in evidence may be taxed as costs as provided by MCR 2.625 in the same manner as depositions recorded in other ways."). The $350, $590, and $578.40 charges for these last three items were therefore appropriately assessed as costs.

MCL 600.2546 provides for medical record costs of $10 plus $1 per page for "all certified copies, and exemplifications of records, pleading and proceedings furnished upon request." While

plaintiff discloses having obtained "Basha," "Neurosurgery," and "McLaren" records, there is no indication in the record of these records being certified or exemplified or of the number of pages in the production. As a result, we do not find these are taxable.

MCL 600.2529 provides for certain circuit court fees that are taxable as costs, including $150 for the filing of a civil action and $20 apiece for five motions for a total under this statute of $250.[12]

Statutory authority for the other costs listed in plaintiff's bill of costs is not readily apparent, nor has plaintiff directed us to any such authority. In this respect the trial court abused its discretion in awarding costs. We accordingly reverse the trial court's award of $6,000 in costs in this matter in its June 20, 2024 order and direct that its amount be amended to $3,768.40.

## H. DENIAL OF STATE FARM'S MOTION FOR JNOV OR A NEW TRIAL

State Farm's amended brief on appeal notes that it highlighted various purported evidentiary errors that the trial court made and that it made these same arguments of evidentiary error in its timely motion for JNOV or a new trial, such that the trial court erred or abused its discretion (as appropriate) in denying this post judgment motion.

This Court reviews a trial court's denial of a motion for JNOV de novo, "view[ing] the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party," whereas a trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *Morinelli v Provident Life and Accident Ins Co*, 242 Mich App 255, 260-261; 617 NW2d 777 (2000).

In light of our having found no such evidentiary errors by the trial court in our resolution of the issues addressed earlier in this opinion, and State Farm failing to make any specific argument as to any specific evidentiary issues in the context of the trial court denying its motion for JNOV or a new trial, we find State Farm has failed to demonstrate that the trial court erred or abused its discretion in denying its motion for JNOV or new trial.

We affirm the April 30, 2024 judgment of the trial court and the July 12, 2024 order denying State Farm's motion for JNOV or a new trial. We further affirm the portion of the court's June 20, 2024 order granting attorney fees to plaintiff but vacate the portion of the order granting costs in the amount of $6000. We remand to the trial court with instructions that the court shall amend the June 20, 2024 order to state that defendant State Farm shall pay to plaintiff costs in the amount of $3768.40. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Randy J. Wallace

---

[12] An award of $20 in costs for each motion is also duplicatively provided for in MCL 600.2441(1).